IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


| | | |
|---|---|---|
| GRACE L. IRONS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 05-509-N-LMB |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM DECISION |
| COMMISSIONER, SOCIAL SECURITY | ) | AND ORDER |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is Grace L. Irons' Complaint seeking review of the

final decision of Respondent denying her claim for Title II Social Security disability benefits.

The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters

the following Memorandum Decision and Order.

## I.

## ADMINISTRATIVE PROCEEDINGS

Grace L. Irons ("Petitioner") applied for a period of disability and disability insurance

benefits under Title II of the Social Security Act on November 11, 2001.  Petitioner was born on

February 15, 1939 (AR 67) and alleged disability beginning September 7, 2001 as a result of

back, shoulder and neck arthritis, and problems from an automobile accident in 1999.  (AR 14).

MEMORANDUM DECISION AND ORDER - 1

Petitioner is insured through May 31, 2004 and, therefore, must demonstrate that she was disabled on or before that date.  (AR 13).

Petitioner alleges that her physical impairments prevent her from "lift[ing], stand[ing] or carry[ing]" and cause her "[c]onstant pain and fatigue."  (AR 77).  Petitioner sought medical treatment from a chiropractor, rather than a medical doctor, due to limited financial means. *Petitioner's Brief in Support of Petition for Review*, p. 4 (Docket No. 15).

Petitioner's application was denied initially and again after reconsideration.  Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  ALJ Richard Hines held a hearing on March 6, 2003.  Petitioner, independent medical examiner ("IME") Dr. William Clayton, and vocational expert Debra N. LaPoint testified at the hearing.  (AR 280). The medical evidence in the record at that time included medical records from treating physician, Dr. James R. Hill (AR 113-14); examining physician, Dr. Craig Stevens (AR 116-22); a nonexamining medical consultant's review and Physical Residual Functional Capacity Assessment (AR 123-30); medical records from Petitioner's chiropractor, Daniel L. Moore (AR 131-92); and medical records from physician's assistant, Michael J. Yourzek of Boundary Community Hospital (AR 193-96).  Dr. Clayton testified that these medical records were limited. Dr. Clayton testified that he had difficulty making sense of the chiropractor's records.  (AR 304). In addition, based on the evaluation performed by the examining physician Dr. Stevens, Dr. Clayton stated that "an examination by an arthritis specialist, a rheumatologist, would be worthwhile."  (AR 305).

On April 14, 2003, ALJ Hines issued a decision denying Petitioner's claim finding she did not have an impairment or impairments that significantly limited her ability to perform basic

MEMORANDUM DECISION AND ORDER - 2

work related activities and, therefore, did not have a severe impairment. (AR 200-03).  Petitioner requested the Appeals Council review the ALJ's decision.  (AR 204).  The Appeals Council granted Petitioner's request, vacated the ALJ's decision and remanded the case for further proceedings.  (AR 207-210).  On remand, the Appeals Council directed the ALJ, in part,  to "[o]btain additional evidence concerning the claimant's arthritic impairments in order to complete the administrative record in accordance with regulatory standards concerning consultative examinations and existing medical evidence (20 CFR 404.1512-1513)."  (AR 209).

Subsequent hearings were held March 4, 2004 and January 6, 2005.  Dr. Glen Almquist testified at the March 4, 2004 hearing (AR 320) and vocational expert, Debra LaPoint testified at the January 6, 2005 hearing (AR 333).  After the hearing on March 4, 2004, additional medical evidence was submitted into the record, including records from Moore Chiropractic from April 18, 2002 to March 13, 2004 (AR 249-260), and examining physicians, Diane L. Rubin, M.D. (AR 261-269) and Michael J. Carraher, M.D. (AR 271-78).

On July 15, 2005, the ALJ issued a second decision denying Petitioner's application, finding that she is able to return to her past relevant work as a gas station attendant and cashier. Petitioner requested the Appeals Council review the ALJ's second decision.  The Appeals Council denied Petitioner's request on November 21, 2005 making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ failed to explain conflicting findings of the three consultive physicians, and the vocational expert gave conflicting critical testimony regarding the Petitioner's past relevant work.

MEMORANDUM DECISION AND ORDER - 3

Petitioner requests that the ALJ's decision be reversed or, in the alternative, this matter be remanded in order to allow the ALJ an opportunity to further evaluate the evidence.

## II.

### STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920 (2005).  The second part of that process involves a determination regarding whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a) (2006).  If no "severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

MEMORANDUM DECISION AND ORDER - 4

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id*. at 1095 (citation omitted).

MEMORANDUM DECISION AND ORDER - 5

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether it is based on application of proper legal standards.

III.

DISCUSSION

**A.**      <u>**Sequential Process**</u>

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since the alleged onset of disability. (AR 20).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). The ALJ found that Petitioner has chronic cervical and lumbosacral pain, right ulnar nerve sensory changes, osteoarthritis of the 1st carpal/metacarpal joint bilaterally, and probable meralgia paraesthetica of the bilateral thighs. These impairments are considered severe. (AR 18).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P,

MEMORANDUM DECISION AND ORDER - 6

Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this case, the ALJ concluded that Petitioner's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (AR 20).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ concluded that Petitioner retains the residual functional capacity for a reduced range of light work and is capable of performing her past relevant work as gas station attendant and cashier.  Therefore, the ALJ found that Petitioner was not under a disability as defined in the Social Security Act at any time through the date of his decision.  (AR 20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Because the ALJ found that Petitioner is capable of performing her past relevant work, he did not address this fifth step.

**B.**   **Analysis**

Petitioner argues that the ALJ erred in finding she could perform the full range of light work.  *Petitioner's Brief in Support of Petition for Review*, p. 4 (Docket No. 15).  Petitioner also takes issue with the testimony of the vocational expert and the related finding that Petitioner is able to perform her previous job as a gas station attendant.  *Id.* at 5-6.

MEMORANDUM DECISION AND ORDER - 7

### 1.      Residual Functional Capacity

Petitioner argues that the ALJ's finding that Petitioner has the residual functional capacity to perform a reduced range of light work is in error.  Specifically, Petitioner argues the finding is in conflict with the testimony of three consultative, examining physicians.

The ALJ found that Petitioner "retains the residual functional capacity for a reduced range of light work." (AR 20).  The ALJ determined that Petitioner "can lift and carry 10 pounds frequently and 20 pounds occasionally.  She can stand, walk, and sit about 6 hours in an 8-hour workday.  She can occasionally climb stairs or ramps.  She should avoid climbing ropes, ladders, or scaffolds.  She should avoid bending, stooping, or crawling."  (AR 18).

Petitioner asserts the ALJ's finding that Petitioner could perform light work conflicts with the following: (1) Dr. Stevens' testimony that Petitioner "may have some difficulty lifting objects weighing more than 15-20 pounds;" (2) Dr. Rubin's finding that Petitioner "can walk/stand up to 6 hours distributed throughout an 8-hour day and allowing normal breaks;" and (3) Dr. Carraher's recommendation that Petitioner never kneel, crouch, or crawl." *Petitioner's Brief in Support of Petition for Review*, p. 4 (Docket No. 15).

### (a)      Dr. Stevens' Evaluation

Dr. Stevens examined Petitioner on March 21, 2002 and ultimately found that Petitioner remained "substantially capable of performing work activity.  She may have some difficulty lifting objects weighing more than 15 to 20 pounds and in stooping and squatting, however, aside from these activities she appears to have significant residual function."  (AR 119). Petitioner claims the physician's recommended limitation on lifting is inconsistent with the regulatory definition of "light work."

MEMORANDUM DECISION AND ORDER - 8

Light work is defined in section 404.1567(b) of Title 20 of the Code of Federal

Regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted
> may be very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls. To be considered capable of performing a full or
> wide range of light work, you must have the ability to do substantially all of these
> activities.

20 C.F.R. § 404.1567(b).

The limitation on lifting is consistent with the regulatory definition of light work, which

may involve lifting up to 20 pounds but requires frequent lifting of only 10 pounds.  *See* 20

C.F.R. § 404.1567(b).  However, while the ALJ incorporated Dr. Stevens' limitation on

stooping, the decision does not address or consider the limitation on squatting as opined by this

physician.

### (b)      Dr. Rubin's Evaluation

Dr. Rubin examined Petitioner on April 22, 2004.  (AR 261-69).  Dr Rubin noted:

> In addition to moderate DDD [degenerative disk disease] L2-3 and L5-Si, I
> suspect she has OA [osteoarthritis] of the cervical and thoracic spine and both
> thumbs.  (This conclusion is based on her history and physical X-rays of these
> sites would be needed for definitive dx).  There was no significant finger
> dysfunction to testing and the labs were negative for a systemic inflammatory
> disease.

(AR 265).  Accordingly, Dr. Rubin recommended the following work restrictions: walk/stand

and sit limited to 6 hours distributed throughout an 8 hour day allowing for normal breaks;

lift/carry limited to 20 pounds occasionally; avoid ladders and use stairs occasionally; occasional

MEMORANDUM DECISION AND ORDER - 9

bending, stooping, kneeling, and crawling; and frequent (not constant) handling, grasping, and manipulating.  (AR 265).

On appeal, Petitioner argues that Dr. Rubin's findings require an alternate sit/stand option.  *Petitioner's Brief in Support of Petition for Review*, p. 4.  However, Dr. Rubin's finding that Petitioner could walk/stand or sit for up to 6 hours in a typical work day allowing for normal breaks (AR 265) is consistent with the regulatory definition of "light work."  "[T]he full range of light work requires standing or walking for up to two-thirds of the workday." *Gallant v. Heckler*, 753 F.2d 1450, 1454, n.1 (9th Cir. 1984) (citing Social Security Ruling ("SSR") 83-10 Unempl.Ins.Rep. (CCH) (New Matters) ¶ 14.531).  Moreover, SSR 83-12 provides that an individual who can adjust to the need to vary sitting and standing during breaks does not require the alternate sit-stand option:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.  (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

SSR 83-12.

Accordingly, the ALJ's decision that Petitioner is capable of light work with some restrictions does not conflict with Dr. Rubin's evaluation of Petitioner.

MEMORANDUM DECISION AND ORDER - 10

(c)        Dr. Carraher's Evaluation

The third consulting physician, Dr. Michael J. Carraher, examined Petitioner on April 4, 2005 (AR 271-78) after the hearings on Petitioner's application.  Dr. Carraher found Petitioner able to do light work with the following restrictions: lifting/carrying: occasionally up to 20 pounds, frequently up to 10 pounds (AR 275); standing and/or walking: about 6 hours in an 8-hour workday (AR 275); occasional climbing, balancing, and stooping (AR 276); and no kneeling, crouching, or crawling (AR 276).

Petitioner argues that the ALJ's decision conflicts with Dr. Carraher's finding that Petitioner should not kneel, crouch, or crawl (AR 276).  In this regard, the ALJ found that Petitioner "should avoid bending, stooping, or crawling."  (AR 18).  However, the ALJ did not incorporate Dr. Carraher's suggestion that Petitioner should not kneel or crouch thereby effectively rejecting that evaluation.  Similarly, as previously noted, the ALJ also did not address or consider Dr. Stevens' recommended limitation on squatting by Petitioner.

Respondent argues that the ALJ was under no obligation to consider Dr. Carraher's opinion for two reasons: (1) the evaluation was performed in April 2005, nearly one year following Petitioner's date last insured (May 31, 2004) and (2) the ALJ need not discuss or fully analyze all evidence presented.  *Respondent's Response to Petitioner's Brief in Support of Petition for Review*, p. 6 (Docket No. 17).  Nonetheless, the case law is clear that medical evaluations performed after the expiration of insured status are relevant to an evaluation of a pre-expiration condition.  *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1996); *see also Flaten v. Sec'y of Health & Human Servs.,* 44 F.3d 1453, 1461 & n. 5 (9th Cir. 1995) ("Retrospective diagnoses by treating physicians and medical experts . . . are . . . relevant to the determination of a

MEMORANDUM DECISION AND ORDER - 11

continuously existing disability with onset prior to expiration of insured status.").  Furthermore, the case law also clearly provides that an ALJ may not reject an examining physician's opinion without some type of analysis or discussion.

The opinion of an examining physician is entitled to considerable weight.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If the examining physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for rejecting the opinion.  *Id.* If the examining physician's opinion is contradicted, then the opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Id.* at 830-831.  The opinion of a nonexamining physician alone cannot constitute substantial evidence sufficient to justify the rejection of an examining physician's opinion.  *Id.* at 831.

The ALJ rejected Dr. Stevens' and Dr. Carraher's recommendations without discussion. Therefore, whether the clear and convincing or the specific and legitimate standard is applied is of no moment.  Without any explanation for rejecting the examining doctor's recommendations, the ALJ's decision is in error.  Moreover, this error is directly relevant to the ALJ's determination that Petitioner had the residual functional capacity to return to her past work as a gas station attendant, whether such work is properly classified as an automobile service station attendant (medium) or an automobile self-service station attendant (light).

### (d)  Petitioner's Credibility

The ALJ's decision is also an implicit rejection of Petitioner's testimony.  Petitioner claims that she is disabled due to back, neck, and shoulder arthritis.  *Petitioner's Brief in Support of Petition for Review.*, p. 1 (Docket No. 15).  According to Petitioner's testimony, she cannot bend over, stoop, or "lift too much."  (AR 288).  In addition, Petitioner testified that she cannot

MEMORANDUM DECISION AND ORDER - 12

sit, stand, or walk for any length of time without severe pain.  (AR 290-93, 298).  She also testified that she must alternate periods of sitting, standing, and walking throughout the day. (AR 298-300).

In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  In the first stage, the ALJ must determine whether a claimant who alleges disability based on subjective symptoms has produced objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  *Id*.  In the second stage, if the claimant produced the required objective medical evidence, the ALJ must determine whether there is evidence of malingering.  *Id*.  If not, the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so."  *Id*.

The ALJ determined that "[t]he record shows very little in the way of objective evidence to support the claimant's complaints of pain."  (AR 18).  However, this objective evidence is sufficient to support the pain and other symptoms alleged.  For example, Dr. Stevens examined Petitioner on March 21, 2002 and found that Petitioner "exhibit[ed] significant restriction of cervical lateral flexion range of motion" and "slight restriction of shoulder external rotation range."  (AR 118).  Further, X-rays showed "straightening of the spine which may be due to positioning or spasm" and degenerative changes at the SI joints.  (AR 122).  In addition, Dr. Rubin diagnosed Petitioner with degenerative disk disease and suspected osteoarthritis of the cervical and thoracic spine and both thumbs.  (AR 265).  This objective evidence supports Petitioner's claimed pain and limitations.  Moreover, there is no evidence or discussion of

MEMORANDUM DECISION AND ORDER - 13

malingering.  Therefore, on remand, the ALJ must provide specific, clear and convincing reasons for rejecting Petitioner's testimony.

### 2.        Testimony of the Vocational Expert

Petitioner argues that the vocational expert, Deborah N. LaPoint, gave conflicting testimony regarding Petitioner's past relevant work.  *Petitioner's Brief in Support of Petition for Review*, p. 5 (Docket No. 15).  Petitioner argues that the vocational expert described the job of automobile self-service station attendant as alternatively "medium strength" and "light level" and this is sufficient reason to remand the case.  *Id.* at 6.

Respondent contends that the vocational expert's opinion was consistent, as she discussed two separate jobs.  *Respondent's Response to Petitioner's Brief in Support of Petition for Review*, p. 7 (Docket No. 17).  The job of automobile service station attendant is classified as medium strength level and the job of automobile self-service station attendant is classified as light.  *Id.*

At the March 6, 2003 hearing, the vocational expert classified Petitioner's prior employment as that of an automobile service station attendant, a semi-skilled occupation classified as medium strength.  (AR 313).  The vocational expert also described the job title of automobile self-serve service station attendant as light with occasional stooping.  (AR 313).  The vocational expert indicated that Petitioner had skills that are transferrable to this type of light work.  (AR 313).

However, at the January 6, 2005 hearing, the same vocational expert described Petitioner's previous work history under the job title of automobile self-service station attendant,

MEMORANDUM DECISION AND ORDER - 14

a semi-skilled occupation classified as light:  "[T]he work history is comprised of the job titles of automobile self-service service station attendant.  This is a semi-skilled job.  It is classified as light."  (AR 336).  The vocational expert added, "we might also want to include automobile service station attendant."  (AR 336).  However, this comment received no further explanation. (AR 336).

Based on the vocational expert's testimony, the ALJ determined that Petitioner "could return to her past relevant work as gas station attendant and cashier, as this work is performed in the national economy."  (AR 20).  However, as noted, there is a distinction between an automobile service station attendant and an automobile *self-service* station attendant.

On remand, the ALJ should have an opportunity to review its determination and make a clear distinction between the two described jobs when determining that Petitioner is capable of returning to her previous work.  Moreover, it is of note that the vocational expert originally testified that even the self-service station attendant must stoop occasionally (AR 313), which the ALJ addressed and determined should be avoided.  (AR 18).

## IV.

### CONCLUSION

On remand, the ALJ should consider: (1) the evaluations provided by all three examining physicians and (2) Petitioner's subjective testimony of physical limitations and pain.  While those evaluations and testimony may be rejected, the ALJ should consider and make the necessary findings regarding these two areas.  In addition, the ALJ should also address and determine what job title, if any, most appropriately fits Petitioner's description of her previous

MEMORANDUM DECISION AND ORDER - 15

employment in the process of determining whether Petitioner was able to perform that employment at all times prior to May 31, 2004.

## V.

## ORDER

For the reasons set forth above, Petitioner's request for review is GRANTED. The Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: **March 29, 2007**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

MEMORANDUM DECISION AND ORDER - 16